UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-CR-148-TBR

UNITED STATES OF AMERICA,                                                              PLAINTIFF

v.

ELIAS ESTEPHANE,                                                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon seven Motions *in Limine*. These matters are now ripe for adjudication. The Court's disposition is discussed in detail below.

**I. Background**

Defendant Elias Estephane ("Estephane") has been charged by the United States with one count of Food Stamp Fraud, in violation of 7 U.S.C. § 2024(b), and two counts of Wire Fraud, in violation of 18 U.S.C. § 1343. [DN 1, at 1-3.] These charges stem from Estephane's operation of "The Meat Store," a meat and poultry store he owned in Louisville, Kentucky. [*Id.* at 2.] The Meat Store participated in the Supplemental Nutrition Assistance Program ("SNAP"). [DN 31.] The United States alleges that "[f]rom in or around January 2012, through in or around July 2016, in furtherance of the scheme and artifice to defraud, [Estephane] agreed to provide cash in exchange for [SNAP] benefits. Specifically, individuals receiving [SNAP] benefits would provide [Estephane] with their Electronic Benefits Transfer cards, and request a specific amount of cash." [DN 1, at 2-3.] Then Estephane would allegedly "give the individual the requested amount in cash, then charge approximately twice the requested amount to a card. [*Id.*] The United States further alleges that Estephane's actions caused wire communications in interstate commerce, thus constituting wire fraud. [*Id.* at 3.] Estephane "does not dispute that he

1

participated in the SNAP program during the period stated in the Indictment, but does dispute the claim that he executed a scheme to defraud or misrepresent material information to the Government." [DN 31, at 1.] The parties have filed seven Motions *in Limine*, four by Estephane and three by the United States. The merits of these motions are discussed below.

## II. Legal Standard

Utilizing its inherent authority to manage the course and direction of the trial before it, this Court has the power to exclude irrelevant, inadmissible, or prejudicial evidence through *in limine* rulings. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). Unless the evidence at issue is patently "inadmissible for any purpose," *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997), though, the "better practice" is to defer evidentiary rulings until trial. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). This stance is favored so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). When this Court issues a ruling *in limine*, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38). Thus, even where a motion *in limine* is denied, the Court may return to its previous ruling at trial "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239).

## III. Motion *in Limine* to Exclude Local SNAP Comparisons

The first Motion at issue is Estephane's Motion *in Limine* to exclude SNAP Comparisons. [DN 32.] The United States has responded. [DN 44.] Here, Estephane argues that, to the extent that the United States wishes to introduce monthly sales figures from other local

meat and poultry stores for comparison purposes, such as Karem's Meats, Dong Phuong Grocery, and Butcher's Best, the United States should be precluded from doing so. [DN 32, at 1.] Estephane argues that "[i]t is not possible to determine whether a SNAP sale is legal by store-to-store comparison," and that "[s]uch evidence is not relevant to the question of whether Mr. Estephane's SNAP sales were legitimate and are not admissible under FRE 402." [*Id.*] Further, Estephane argues that, even if the monthly sales comparisons have any relevancy to the instant case, "any probative value is substantially outweighed by the danger of unfair prejudice and thus is inadmissible pursuant to FRE 403." [*Id.*] In its Response, the United States "agree[s] to the primary request in [Estephane's] motion, in that [the United States] will not seek to introduce monthly total SNAP sales numbers in store-to-store comparison including Karem's Meats, Dong Phuong Grocery, and Butcher's Best. Because of this, Estephane's Motion *in Limine* on this issue has been rendered moot.

### IV. Motion *in Limine* to Exclude Informant Video

The second Motion at issue is Estephane's Motion *in Limine* to exclude a video taken of a transaction between a confidential informant and a sales clerk at the Meat Store. [DN 39.] The United States has responded to this Motion. [DN 43.] As described in Estephane's Motion, this video "purports to show an undercover transaction in [Estephane's] retail establishment known as the 'Meat Store.' Mr. Estephane is not shown in the video. The informant…makes a $7.00 transaction and asks for change back on his EBT card. The informant deals with another individual (not the Defendant Estephane)." [DN 39, at 1.] Estephane argues that "[t]he video does not establish that a crime occurred," and that it "is so minimally probative of any issue of consequence in this case that it's [sic] admission will necessarily create a danger of misuse by the jury to the Defendant's substantial prejudice." [*Id.*] Further, Estephane argues that the video

"is an attempt by the United States to show a culture of crime occurring at Mr. Estephane's store." [*Id.*] Estephane seeks to have this video excluded under Federal Rules of Evidence 403 and 404. Rule 403 allows for the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 404(a) prohibits the introduction of propensity evidence. Fed. R. Evid. 404(a).

The United States has made known its intention to introduce this video into evidence at trial. To that end, the United States makes three separate arguments. First, it argues that Estephane "was responsible for any SNAP benefits fraud done by his employees." [DN 43, at 2.] Estephane, as the owner of the Meat Store, "is the one who would profit from any SNAP benefits fraud," because "[a]ll money from SNAP benefits used at the Meat Store was deposited into a bank account under [Estephane's] control." [*Id.*] Additionally, Estephane was responsible for training his employees on SNAP issues and for making sure they followed proper protocols. Thus, the United States argues, "[t]he fact that [Estephane] was responsible for training employees on SNAP regulations and was the one who profited from violations of the regulations through fraud provides a solid evidentiary basis for linking SNAP-related actions of Meat Store employees to the Defendant." [*Id.*] The United States uses this information to try and establish that "the employee is a co-conspirator, and the comment [made by the employee to the informant regarding SNAP benefits exchanges for cash] is a co-conspirator statement." [*Id.* at 2-3.] The Court rejects this argument.

Pursuant to Federal Rule of Evidence 801(d)(2)(E), a statement made by a defendant's co-conspirator "during and in furtherance of the conspiracy" is not hearsay. For such a statement

to be admissible under this rule, the proffering party must prove three things: (1) a conspiracy existed; (2) that the defendant was a member of this conspiracy; and (3) the co-conspirator's statement was made in furtherance of that conspiracy. *United States v. Rogers*, 118 F.3d 466, 477 (6th Cir. 1997). As an initial matter, the United States has not shown that a conspiracy existed with respect to the alleged fraudulent exchange of SNAP benefits for cash. The employee from the informant video was not indicted, is not a co-defendant in this case, and the United States has not set forth facts or an argument tending to show that a "conspiracy" existed under the meaning of the term. "The government must submit non-hearsay evidence – evidence beyond the declarant's statements – to corroborate these contentions." *United States v. Harris*, 200 F. App'x 472, 485 (6th Cir. 2006) (citing *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006), *cert. denied*, 547 U.S. 1217 (2006)). Here, the United States has simply failed to show that (a) a conspiracy existed, or (b) that the employee in the video or Estephane was actually a part of it. Because the United States has not shown that a conspiracy existed and, if it did, what members comprised it, or what the conspiracy's aims were, the Court need not reach the issue of whether the statements in the video were made in furtherance of that conspiracy.

The second argument advanced by the United States is that "the transaction [shown in the video] is important background information for Confidential Informant No. 2's testimony." [DN 43, at 3.] Here, the United States cites *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977) for the proposition that "[t]he jury is entitled to know the 'setting' of a case." This is true, as is the notion that a jury "cannot be expected to make its decisions in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Id.* However, the Court does not believe that this language is properly applied to the informant video in this case. First, Estephane, the individual actually charged, is not present in the video,

nor is he referenced in the video. Second, the video does not show any fraud taking place. [*See* DN 43, at 3, explaining that the informant "was unsuccessful, but he was encouraged to come back to the store."] Third, the Court fails to see how the video is "relevant to…any attacks on Confidential Informant No. 2's credibility," or how "[l]eaving out the first visit would mislead the jury." [*Id.*] Instead, the Court agrees with Estephane's characterization of the video that the "minimal[ly] probative value of this video contrasts sharply with its potential to unfairly prejudice the Defendant and confuse the jury." [DN 39, at 3.] In short, the jury is certainly entitled to "know the setting of [the] case," *Roberts*, 548 F.2d at 667, but the Court finds that this generalism is not appropriately applied to an undercover informant video which shows no illegal activity or the defendant.

The third argument offered by the United States is that the "transaction is relevant to proving the Defendant's knowledge of SNAP restrictions on trading cash for SNAP benefits." [DN 43, at 3.] This argument is unconvincing, for while the conduct of the employee in the video is questionable, Estephane was not present when the exchange took place, nor did the employee expressly reference Estephane's willingness to fraudulently exchange SNAP benefits for cash. Instead, the video merely shows one of Estephane's employees suggesting that an exchange could be made in the future if the informant shopped at the Meat Store more frequently. The United States has made known its intention to offer testimony that Estephane's two sons, employees at the Meat Store, had actual knowledge of the fraudulent scheme. [*Id.*] Thus, this video is certainly relevant under Federal Rule of Evidence 401. However, even where evidence is relevant, it may be excluded where that relevance is substantially outweighed by the danger of unfair prejudice or confusing the jury, among other issues. Fed. R. Evid. 403. The Court utilizes its broad discretion on evidentiary matters to exclude this video. The United States argues that

the video is not unfairly prejudicial because "the Defendant was not even present for the transaction." [DN 43, at 4.] However, in the Court's estimation, that actually makes it *more* prejudicial to Estephane, for there is no indication in the video that Estephane knew anything with respect to a fraudulent SNAP benefits exchange, even though that is the implication of the video. The Court will exclude it.

**V. Motion *in Limine* to Exclude Reverse 404(b) Evidence**

The third Motion at issue is the United States' Motion *in Limine* to exclude Estephane's reverse 404(b) evidence. [DN 40.] The United States references Estephane's intent to "introduce evidence of instances when he did not exchange cash for SNAP benefits, such as evidence that he sold meat generally or instances when he legitimately exchanged eligible food items for benefits." [*Id.* at 1.] The United States argues that this evidence both violates 404(b) and is irrelevant. [*Id.*]

Pursuant to Federal Rule of Evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "Reverse 404(b)" evidence is also evidence of a prior act or acts but "is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant." *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004). "Despite the different implications raised by the admission or exclusion of reverse 404(b) evidence," the Sixth Circuit has applied its "standard 404(b) analysis in addressing the admissibility of such evidence." *United States v. Clark*, 377 F. App'x 451, 458 (6th Cir. 2010).

This Court is guided by the Sixth Circuit's decision in *United States v. Daulton*, 266 F. App'x 381 (6th Cir. 2008) in reaching its decision that this reverse 404(b) evidence should be excluded. In *Daulton*, the defendant, a tax preparation business employee, "was indicted on ten

7

counts of aiding or assisting in the preparation or filing of false federal income tax returns…for the years 1997 and 1998. *Id.* at 383. That number was later pushed up to eighteen counts. *Id.* The district court excluded the defendant's proffered evidence "from clients who had their tax returns prepared by [the tax preparation business] for several years and whose returns never included false deductions." *Id.* at 384. The district court concluded that introduction of instances in which the defendant did *not* engage in illegal activity would be "irrelevant and immaterial to whether [the defendant] prepared the eighteen false returns listed in the indictment." *Id.* at 386. The *Daulton* Court then cited to its previous decision in *United States v. Dobbs*, 506 F.2d 445, 447 (6th Cir. 1975), where it "found noncriminal conduct irrelevant because the defendants were charged with separate instances of criminal conduct and not a scheme." *Daulton*, 266 F. App'x at 386 (citing *Dobbs*, 506 F.2d at 447). Crucial to the district court's decision was that the defendant in *Daulton* was not accused of "always engag[ing] in criminal activity when preparing tax returns, but rather that the defendant has a method for maximizing refunds by including deductions for expenses that were not incurred. Therefore, the proffered evidence of instances in which [the defendant] prepared truthful returns is irrelevant to the charged instances." *Id.*

The facts of *Daulton* bear a striking resemblance to this case. Specifically, the United States provides in the instant Motion that "there is no allegation that…[Estephane's] stores were mere fronts for non-stop fraud," and that it "acknowledges that the Meat Store and the Meat Store 2 both were real businesses that sold meat…." [DN 40, at 2.] Rather, Estephane has been charged with one count of SNAP fraud and two counts of wire fraud; he has not been charged with conspiracy, and the United States has made no allegations to that effect. Estephane, of course, argues that evidence of non-fraudulent sales at the Meat Store is relevant under Federal Rule of Evidence 401, stating that "[e]vidence tending to show a pattern or practice of lawful

8

dealing[s] certainly bears on the question of whether fraud has occurred." [DN 46, at 1.] However, "[e]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *Dobbs*, 506 F.2d at 447. Here, the Court applies the rule and reasoning of *Daulton* and reaches the conclusion that Estephane's proffered evidence is immaterial and irrelevant to the question of whether, on the times in question, he committed fraudulent acts. Because "[e]vidence of noncriminal activities 'would only be relevant if the indictment charges the defendant[] with ceaseless criminal conduct,'" *Daulton*, 266 F. App'x at 386 (quoting *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990)), the Court will exclude this evidence.

**VI. Motion *in Limine* to Exclude References and Records Pertaining to 2010 Assault**

The fourth Motion at issue is the United States' Motion *in Limine* to exclude references to and records pertaining to a 2010 assault suffered by Estephane. [DN 41.] The United States explains that in February 2010, "prior to the alleged conduct in this case, the Defendant was assaulted while working at his former store…, which is not one of the stores at issue in this case. As a result of this assault, the Defendant incurred injuries, including a head injury, and had to…undergo rehabilitation therapy." [*Id.* at 1.] And because Estephane has indicated to the United States that he intends to introduce evidence referencing or otherwise pertaining to this assault, the United States has objected, arguing that this evidence is "irrelevant and more prejudicial than probative." [DN 41 at 1.] The Court agrees.

Pursuant to Federal Rule of Evidence 401, "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Estephane has not offered, and the Court cannot find, any reason why evidence of this assault would have a tendency to make any fact more or less probable in a SNAP- and wire-fraud case stemming from events that did not even begin to

allegedly occur until roughly two years later. [*See* DN 41.] As the United States notes, "[t]he assault described in the records occurred prior to the allegations in the Indictment and prior to the time that the Defendant opened the Meat Store…Records concerning the assault do not make any element required to prove [or disprove] SNAP fraud or wire fraud more or less probable." [*Id.* at 2.]

Additionally, even if evidence of the 2010 assault has *some* tendency to make a fact more or less probable in this case, and is of consequence in determining whether SNAP- and wire-fraud occurred, any probative value the evidence has is substantially outweighed by the prejudicial or misleading effect it could have on the jury. *See* Fed. R. Evid. 403. Specifically, the degree of probativeness that the assault could have in a case such as this is infinitesimal; conversely, the prejudicial effect that this evidence could have on a jury could be substantial, in that it might engender irrelevant sympathies that do not bear whatsoever upon the elements of this type of case. Moreover, the evidence of a prior head injury from which Estephane has apparently completely recovered could mislead the jury into an analysis of Estephane's mental health. The Court will exclude references to and records pertaining to the 2010 assault.

### VII. Motion *in Limine* Opposing Defendant's Request for Jury Calculation of Loss

The fifth Motion *in Limine* is the United States' Motion opposing Defendant's request for jury calculation of loss. [DN 42.] Defendant has not filed any objections at this time. Therefore, the Court determines that the Defendant has no objections and the Motion is granted.

### VIII. Motions *in Limine* to Preclude Statewide Store Averages of SNAP Transactions and the "Computer Generated Red Flags"

The sixth and seventh Motions at issue are Estephane's Motions *in Limine* to exclude the introduction into evidence of statewide averages of SNAP transactions, [DN 48], and to exclude

the "computer generated red flags."[1] [DN 49.] The United States has responded. [DN 50.] In support of his Motions, Estephane argues that (1) the evidence of such statewide averages and ALERT scans would be irrelevant under Federal Rule of Evidence 401; (2) "[t]he calculation of statewide store averages…involves assumptions, theories, and mathematical operations that cannot be testified to by non-expert witnesses," as do the ALERT scans, and (3) "the proposed testimony would not be helpful but would instead confuse and mislead the jury" in violation of Rule 403. [DN 48, at 1.]

First, as noted above, the test for relevancy under Rule 401 presents a low bar: the proffered evidence need only "make a fact more or less probable than it would be without the evidence; and…[be] of consequence in determining the action." Fed. R. Evid. 401. Here, the Court is satisfied that the statewide averages of SNAP transactions and the ALERT system evidence are relevant. Estephane appears to concede that this evidence would make a fact "more or less probable," but argues that "the reason for the investigation does not address an *issue of consequence* in this case." [DN 48, at 1 (emphasis added).] To be sure, that is the second requirement under the Rule 401 test for relevancy. However, as the United States correctly points out, "of consequence" should not be equated with "dispositive." [DN 50, at 3.] Rather, the phrase "of consequence" is more appropriately analyzed through the lens of materiality, as applied to a given case. *See United States v. Dunn*, 805 F.2d 1275, 1281 (6th Cir. 1986) (explaining that "the fact to be proved must also be 'of consequence to the determination of the action'; that is, material.") Here, the statewide averages of SNAP transactions are material to the case, as are the

---

[1] What Estephane refers to as "computer generated red flags," the United States identifies as "ALERT scans." These so-called "'ALERT scans' are programmed into the USDA ALERT system, which tracks each SNAP purchase, including the time and date of each transaction, the card number for the SNAP EBT card that was used, the dollar amount of the purchase, how much money was available on the card prior to the purchase, and which store the transaction occurred at. These red flag were added into the ALERT system based on what the USDA retailer investigators were seeing in terms of unusual transactions during fraud investigations. The ALERT scans are not viewed as definitive markers of fraud, but rather are used as an investigative tool in identifying transactions and retailers for further investigation." [DN 50, at 2.]

ALERT scans, the latter of which are what actually prompted the investigation into Estephane's business in the first place. [*See* DN 50, at 2.] Estephane has been charged with, among other things, the act of providing cash back to customers on SNAP transactions for $.50 on the dollar. Thus, there could very well be slight or extreme deviations between the sales numbers at the Meat Store and other similar meat and poultry stores. Similarly, there could be almost no variance between the Meat Store and other meat and poultry stores, which would also be "of consequence" to this action. Moreover, evidence explaining exactly *why* the United States became interested in Estephane's business, the ALERT scans, certainly appears to the Court to be of consequence in this case.

Second, the Court is not convinced that an expert would be needed to proffer evidence regarding simple averages or the ALERT scans. Indeed, the Sixth Circuit has noted that "there is no requirement that statistical evidence be supported by expert testimony." *McCabe v. Champion Intern. Corp.*, 916 F.2d 713 (6th Cir. 1990). Simple averages are "matter[s] of arithmetic 'within the capacity of any reasonable lay person.'" *United States v. Madison*, 226 F. App'x 535, 544 (6th Cir. 2007) (quoting *United States v. Hamaker*, 455 F.3d 1316, 1331-32 (11th Cir. 2006). Also, as the Tenth Circuit has noted, "[a] mathematical calculation well within the ability of anyone with a grade-school education is, in our opinion, more aptly characterized as a lay opinion under Fed. R. Evid. 701." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005)). And here, the United States has made known its intent to offer these statistics not as an opinion of Estephane's allegedly fraudulent behavior, but rather, "in the form of facts" regarding the statewide averages, and nothing more. [*See* DN 50, at 6.]

Moreover, although the Sixth Circuit does not appear to have had occasion to examine the issue of whether experts are required for the presentation of evidence regarding the ALERT

scans, the Southern District of Texas has, and ruled that experts were not required. *See Tikabo v. United States*, No. H-16-2197, 2017 U.S. Dist. LEXIS 151959, at *13 (S.D. Tex. Aug. 21, 2017) (explaining that "no…expert report is required to support the ALERT data or analysis resulting from such data"); *see also Maredia v. United States*, No. 4:13-cv-1124, 2016 U.S. Dist. LEXIS 189772, at *14-15 (S.D. Tex. Aug. 16, 2016) (explaining that "[t]his Court knows of no other court that requires an expert affidavit for the use of the ALERT data or the analysis thereof.").

Third, Estephane argues that, even if the statewide averages and ALERT scans are relevant and do not require expert testimony, this evidence should be excluded under Rule 403. Estephane does not cite to authority, other than to the Federal Rules of Evidence generally, in support of his argument as to why this is the case, but merely states that "the proposed testimony would not be helpful but would instead confuse and mislead the jury," [DN 48, at 1], and that "[t]he jury will wrongfully give this 'scientific evidence' more weight than it deserves to Mr. Estephane's prejudice." [DN 49, at 1.] The Court is confident that simple averages regarding statewide store SNAP sales would not "confuse" the jury. Additionally, there is no evidence regarding *how* the jury would be misled by the presentation of this evidence. Conversely, information concerning the ALERT scans and precisely how the investigation into Estephane began is highly probative and will provide the jury with crucial information concerning how the investigation works and what markers the United States looks for in these situations. The probative value of the statewide averages and the ALERT scans is not substantially outweighed by any prejudicial effect to Estephane, or any risk of juror confusion. For these reasons, the Court will allow the introduction of both pieces of evidence.

## IX. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1) Estephane's Motion *in Limine* to exclude local SNAP comparisons [DN 32] is **DISMISSED AS MOOT.**

2) Estephane's Motion *in Limine* to exclude the undercover informant video [DN 39] is **GRANTED.**

3) The United States' Motion *in Limine* to exclude reverse 404(b) evidence [DN 40] is **GRANTED.**

4) The United States' Motion *in Limine* to exclude references to and records pertaining to the 2010 assault [DN 41] is **GRANTED.**

5) Estephane's Motion *in Limine* to preclude introduction of statewide store averages of SNAP transactions [DN 48] is **DENIED.**

6) The United States' Motion *in Limine* Opposing Defendant's Request for Jury Calculation of Loss [DN 42] is **GRANTED.**

7) Estephane's Motion *in Limine* to preclude introduction of computer generated red flags [DN 49] is **DENIED.**

      **IT IS SO ORDERED**

cc:      Counsel of Record